Daniel Cooper (Bar No. 153576)
Martin McCarthy (Bar No. 194915)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: daniel@lawyersforcleanwater.com

Christopher Sproul (Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com

Jason Flanders (Bar No. 238007)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: jason@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>         Plaintiff,<br><br>   v.<br><br>CITY OF SAN CARLOS, a California municipal corporation,<br><br>         Defendant. | Civil Case No.:  CV 09-05677 SBA<br><br><br>**CONSENT DECREE** |

1

2

**CONSENT DECREE**

3        The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper

4 ("Plaintiff" or "Baykeeper"), and defendant City of San Carlos ("City" or "Defendant").  The entities entering

5 into this Consent Decree are each referred to herein as "Party" and collectively as "Parties."

6        **WHEREAS**, Baykeeper is a non-profit public benefit corporation dedicated to, among other

7 things, the protection and enhancement of the water quality of the San Francisco Bay;

8        **WHEREAS**, the City is a municipal corporation and political subdivision of the State of

9 California;

10       **WHEREAS**, the City owns and/or operates a sanitary sewer collection system that collects,

11 treats, and discharges wastewater generated by residential, commercial, and industrial sources;

12        **WHEREAS**, the City is one of twenty cities and towns in San Mateo County that have joined

13 together to form the San Mateo Countywide Stormwater Pollution Prevention Program ("STOPP").

14 STOPP's National Pollution Discharge Elimination System ("NPDES") permit, *Waste Discharge*

15 *Requirements for City/County Association Of Governments Of San Mateo County, et al.*, San Francisco

16 Regional Water Quality Control Board Order No. 99-058, NPDES Permit No. CAS0029921, reissued as

17 Order No. 99-059, and subsequently amended by Order Nos. R2-2003-0023, R2-2004-0060, R2-2004-

18 0062, and R2-2007-0027 ("MS4 Permit"), regulates discharges into and out of the City's municipal

19 separate storm sewer system;

20        **WHEREAS**, on September 28, 2009, Baykeeper issued to Defendant a 60-day Notice of

21 Violation and Intent to File Suit ("Notice Letter") under section 505(a) of the Federal Water Pollution

22 Control Act ("Clean Water Act"), 33 U.S.C. § 1365(a).  Baykeeper also served a copy of the Notice Letter

23 on, the Administrator and the Regional Administrator for Region IX of the United States Environmental

24 Protection Agency ("EPA"), the Executive Director of the California State Water Resources Control Board

25 ("State Board"), and the Executive Officer of the San Francisco Bay Regional Water Quality Control

26 Board ("Regional Board").  The Notice Letter alleged that Defendant violated and continues to violate the

27 Clean Water Act for discharges of pollutants to waters of the United States without NPDES permit

28 coverage, and discharges of pollutants in violation of the MS4 Permit;

**WHEREAS**, on December 2, 2009, Plaintiff filed its complaint in the United States District Court for the Northern District of California ("District Court") against Defendant, Case No. CV 09-05677 SBA (hereinafter "Complaint");

**WHEREAS**, on September 28, 2009, Plaintiff sent Defendant a letter notifying the Defendant of Plaintiff's intent to seek a peremptory writ of mandate ordering the Defendant to comply with California Water Code §§ 13000 *et seq.* (the "Porter-Cologne Act"), the *Statewide Waste Discharge Requirements for Sanitary Sewer Systems*, State Water Resources Control Board Order No. 2006-0003-DWQ and Monitoring and Reporting Programs No. 2006-0003 DWQ, as amended by Order No. 2008-0002-EXEC ("SSO WDR"), the San Mateo County Ordinance, and the San Carlos Municipal Code;

**WHEREAS**, Defendant denies Baykeeper's allegations that it has violated the Clean Water Act and/or any of the permits as alleged in the Complaint, denies that it failed to perform its duties under the Clean Water Act, the Porter-Cologne Act, the SSO WDR, the San Mateo County Ordinance, or the San Carlos Municipal Code as alleged in the Complaint, and denies it has liability to Baykeeper or other citizen groups;

**WHEREAS**, the Parties, through their authorized representatives and without either adjudication of the Complaint's claims or admission by Defendant of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**WHEREAS,** all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**WHEREAS**, for purposes of settlement, the Parties waive all objections that they may have to the Court's jurisdiction to enter and retain jurisdiction over this Consent Decree.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

## I.  <u>GENERAL OBJECTIVES</u>

1.      The objectives of this Consent Decree are:

      a.      To ensure that Defendant uses, implements, and improves ways, means, and methods to prevent sanitary sewer overflows;

b.      To ensure that the City uses, implements, and improves ways, means, and methods to prevent violations of, or comply with, applicable permits, laws, and regulations as related to sanitary sewer overflows.

## II.      DEFINITIONS

2.   Unless otherwise expressly defined herein, terms used in this Consent Decree that are defined in the Clean Water Act or in regulations, or in rules promulgated under the Clean Water Act, have the meaning assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.      'Consent Decree' means this Consent Decree, the District Court's Stipulated Order of Dismissal, and any Exhibits or documents incorporated by reference into this Consent Decree.

b.      'SSA' means Sewer Condition Assessment by closed-circuit television or alternative inspection technology as referenced in the May 2009 EPA Report on the Condition Assessment of Wastewater Collection Systems-State of Technology Report, provided that any alternative inspection technology employed performs at a level superior or equal to closed-circuit television for all purposes.

c.      'San Carlos Collection System' means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership and responsibility of the City that are used to convey wastewater generated by residential, commercial, and industrial sources to the South Bayside System Authority facilities, ending at the inlet to the South Bayside System Authority Waste Water Treatment Plant ('WWTP') pump station on Monte Vista Drive near the San Carlos Airport.  For purposes of this Consent Decree, the San Carlos Collection System does not include the Devonshire County Sanitation District, the Scenic Heights County Sanitation District, the Emerald Lake Heights Sewer Maintenance District or the  Harbor Industrial Sewer Maintenance District, Private Laterals or other privately owned or operated infrastructure that may connect to the San Carlos Collection System.

d.      'CCTV' means closed-circuit television.

e.      'CIP' means the City's sanitary sewer system capital improvement program.

f.      'City' or 'the City' means the City of San Carlos, California.

g.      'Day' means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

h.      'Design Storm' means a 10-year return period rainstorm with a duration of 24 hours as measured by a properly calibrated and monitored rain gage, or such rain gages, within San Carlos or, if no such gage is available, at the San Francisco International Airport.  The engineering design criteria to be used by the City for a 10-year 24-hour storm shall take into account short duration intense rainfall periods by reference to USDA Urban Hydrology for Small Watersheds guidance TR-55 (June 1986) and use of the synthetic rainfall distribution curve (Figure B-1 SCS 24-Hour Rainfall Distribution) found in Appendix B of TR-55.  The City shall use the distribution curve for a Type IA storm as referenced on Figure B-1 of Appendix B of TR-55 based on local rainfall quantities for the San Carlos area in San Mateo County, California.

i.      'FOG' means fats, oil, and grease.

j.      'Infiltration' means groundwater, rainwater, or other surface water that may enter the San Carlos Collection System through the pipe, joints, or cracks.

k.      'Inflow' means wastewater or water that may enter the San Carlos Collection System through unpermitted connections, drains, or manholes.

l.      'I/I' means infiltration and inflow.

m.      'Lower Lateral' means the lateral line connecting a home or business to the City's sewer main extending  from the sewer main to the City's clean out or to the back of the public right-of-way, whichever is applicable to the lateral connection.  Lower Laterals are generally connected to upper laterals.

n.      'MS4 Permit' means the *Waste Discharge Requirements for City/County Association Of Governments Of San Mateo County, et al.*, San Francisco Regional Water Quality Control Board Order No. 99-058, NPDES Permit No. CAS0029921, reissued as Order No. 99-059, and subsequently amended by Order Nos. R2-2003-0023, R2-2004-0060, R2-2004-0062, and R2-2007-0027.

o.      'NPDES' means National Pollutant Discharge Elimination System.

p.      'Private Lateral' means the private sanitary sewer lateral or line connecting a home or other structure to the Lower Lateral, generally extending from the outside of the foundation of the structure to the public right-of-way or the City's cleanout, whichever is applicable

q.      'Sanitary Sewer Overflow', 'overflow', or 'SSO' has the same meaning as those terms are defined in Section A.1 of the SSO WDR', or any amendment thereto, and which currently means: 'any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from a sanitary sewer system. SSOs include:  (i) Overflows or releases of untreated or partially treated wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into buildings and on private property that are caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer system." For purposes of this definition, 'waters of the United States' has the meaning as set forth in 40 C.F.R. § 122.2.

r.      'Sewer line segment' means any section of publicly owned sewer line or pipe located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

s.      'SSMP' means the Sewer System Management Program implemented by the City for the San Carlos Collection System to monitor the condition, maintenance, and repair of the San Carlos Collection System.

t.      'Year' shall mean calendar year, unless otherwise specified.

### III.   JURISDICTION AND VENUE

3.  Plaintiff alleges the following jurisdictional allegations:

a.      This District Court has jurisdiction over the subject matter of the claims asserted by Plaintiff pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States), and 28 U.S.C. § 1367(a), which provides supplemental jurisdiction for claims based on state law, including, but not limited to, California Code of Civil Procedure section 1085, the

California Water Code sections 13000 *et seq.*, (the Porter-Cologne Act), San Mateo County Ordinance, title 4 sections 100.010 *et seq* ("San Mateo Ordinance"), and the City of San Carlos Municipal Code, title 13 sections 14.010 *et seq.* ("Municipal Code");

        b.      Venue is proper in this judicial district pursuant to sections 309(b) and 505(c) of the Clean Water Act, 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c);

        c.      The Complaint filed herein states claims for which relief can be granted against Defendant pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1365;

        d.      Plaintiffs have standing to bring this action;

        **e.**      The District Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the District Court to resolve any motion to enforce this Consent Decree.

## IV.  EFFECT OF CONSENT DECREE

4.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Consent Decree.

5.  Nothing in the Consent Decree, including but not limited to the proposed actions and payments made pursuant to the Consent Decree, shall be used as evidence or be construed as a finding, adjudication, or acknowledgement of any fact, law, issue of law, or liability, nor shall it be construed as an admission of violation of any law, issue of law, rule, regulation, permit, or administrative order by Defendant.

## V.  APPLICABILITY

6.  The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

7.  The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the

Defendant does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and/or Complaint.

8.   No change in ownership or corporate or other legal status of the Defendant or any transfer of the Defendant's assets or liabilities shall in any way alter the responsibilities of the Defendant or any of its successors or assigns thereof, under this Consent Decree.  In any action to enforce this Consent Decree, the Defendant shall not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree. Defendant is not precluded from raising as a defense that a particular spill in the San Carlos Collection System was caused by an upstream sewage collection system ("Satellite System") connected to the San Carlos Collection System.  To assert this defense for a particular spill, Defendant shall have the burden to demonstrate that: (1) Defendant has initiated and is diligently prosecuting enforcement of its service contract with the Satellite System to address the cause the spill; and (2) that the Satellite System directly caused the spill in question.

## VI.   EFFECTIVE DATE AND TERMINATION DATE

9.   The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice to comment on the [proposed] Consent Decree, i.e., the 45th day following the United States Department of Justice's receipt of the [proposed] Consent Decree and Stipulated Dismissal or, the date on which the Federal Agencies provide notice that no further review is required and the District Court enters the final Consent Decree, whichever occurs earlier.

10. This Consent Decree will automatically terminate seven (7) years from the Effective Date ("Termination Date") unless Baykeeper has invoked the Dispute Resolution Procedure set forth in Section XIX or the Parties have agreed to an early termination of this Consent Decree and the District Court has authorized the modification of the Termination Date.

11. The obligations set forth in this Consent Decree take effect as of the date of execution by all Parties unless otherwise noted in this Consent Decree.

## VII.   SSO AND SPILL REDUCTION PERFORMANCE STANDARDS

12. SSO Reduction Goals.  It is the goal of this Consent Decree to reduce the City's Collection System SSOs to zero (0) over time.  To approach the goal of zero (0) SSOs, the City shall reduce its

SSOs and Lower Lateral spills as follows:

    a.   <u>San Carlos Collection System SSO Reduction Performance Goals</u>.

| Calendar Year | Maximum Number of SSOs Per 100 Miles of Sewer Line/Year |
|---|---|
| 2010 | 46 |
| 2011 | 41 |
| 2012 | 32 |
| 2013 | 23 |
| 2014 | 14 |
| 2015 | 7 |
| 2016 | 5 |
| 2017 | 2 |

    b.   <u>Lower Lateral SSO Reduction Performance Goals</u>.

The City's goal is to reduce the annual number of Lower Lateral spills.  The Lower Lateral SSO

Reduction Standards are as follows:

| Calendar Year | Maximum Number of Lower Lateral Spills |
|---|---|
| 2010 | 18 |
| 2011 | 16 |
| 2012 | 13 |
| 2013 | 10 |
| 2014 | 7 |
| 2015 | 4 |
| 2016 | 3 |
| 2017 | 2 |

    13. For purposes of determining compliance with the San Carlos Collection System SSO

Reduction Performance Goals and Lower Lateral SSO Reduction Performance Goals, SSOs and spills caused by storm events exceeding the Design Storm shall not be counted.

14. For purposes of determining compliance with the San Carlos Collection System SSO Reduction Performance Goals and Lower Lateral SSO Reduction Performance Goals, the Parties assume the City currently has approximately 106 miles of main sewer line in the San Carlos Collection System.

15. Failure to meet the San Carlos Collection System SSO Reduction Performance Goals shall be a violation of this Consent Decree to be resolved by the Dispute Resolution procedure in Section XIX below.

16. Failure to meet the Lower Lateral SSO Reduction Performance Goals shall be a violation of this Consent Decree to be resolved by the Dispute Resolution procedure in Section XIX below.

17. In order to reach the above SSO standards, the City shall implement the programs described below.

18. Compliance or non-compliance with the SSO Reduction Performance Goals and Lower Lateral SSO Reduction Performance Goals shall be documented by the City in each year's Annual Report required under Section XVI of this Consent Decree.

## VIII.   SSO INVESTIGATION, RESPONSE AND REPORTING

19. The terms, conditions, obligations, and requirements of the City's current Sanitary Sewer Overflow Response Plan ("SORP") are incorporated into this Consent Decree, and are enforceable pursuant to this Consent Decree.

20. The City recognizes that proper identification of the cause of SSOs is essential to prevent future SSOs.

21. Within one-hundred twenty (120) days of the Effective Date of this Consent Decree the City shall prepare a standard operating procedure ("SSO Cause Determination SOP") aimed at the proper and consistent determination of the cause of each SSO.  The City shall provide a copy of the SSO Cause Determination SOP to Baykeeper for review and comment within seven (7) days of its finalization. Within thirty (30) days after providing the SSO Cause Determination SOP to Baykeeper, the City shall train all of its personnel who respond to SSOs regarding how to use the SSO Cause Determination SOP. Baykeeper shall provide the City, in writing, with all recommended revisions to the SSO Cause

Determination SOP within thirty (30) days after receiving the SSO Cause Determination SOP from the City. Upon receipt of Baykeeper's comments, the City shall consider each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether the City accepts each such recommendation for revision, and if not, provide a detailed explanation as to why Baykeeper's comments are being rejected. Baykeeper may seek dispute resolution pursuant to Section XIX of this Consent Decree regarding disputes over the SSO Cause Determination SOP. In any such dispute resolution process, the City shall demonstrate that the elements or actions set forth in the SSO Cause Determination SOP are designed to ensure causes of the SSOs can be readily and accurately determined. To the extent the Parties do not dispute specific original provisions of the SSO Cause Determination SOP or specific recommended revisions, the City shall implement all undisputed provisions or revisions within thirty (30) days of receiving Baykeeper's comments on the SSO Cause Determination SOP. After the Parties have reached agreement on the SSO Cause Determination SOP, or after the dispute resolution process resolves any dispute concerning the SSO Cause Determination SOP, the City shall begin implementation of the SSO Cause Determination SOP as an enforceable requirement of this Consent Decree within sixty (60) days of agreement or upon the schedule set forth therein.

22. Within one-hundred eighty (180) days of reaching agreement with Baykeeper regarding the SSO Cause Determination SOP, the City shall complete training of all City personnel that respond to SSOs in the methods and practices used to identify the root causes of SSOs, including capacity related SSOs, and shall certify to Baykeeper that the training has been completed. All new employees who may respond to SSOs shall be trained in the methods and practices used to identify the root causes of SSO within sixty (60) days of commencing employment or transfer to duties that include SSO response and the City shall maintain records of such training.

23. The cause of any SSO shall be reported to the State Board's California Integrated Water Quality System ("CIWQS") and entered into and maintained in the City's Computerized Maintenance Management System (CMMS) database. The information in the CMMS database shall be used in evaluating the City's programs. The City shall include in its Annual Report required under Section XVI of this Consent Decree a summary of SSO causes as determined by analysis of its CMMS database.

24. In the first two Annual Reports required by Section XVI of this Consent Decree, the City shall provide to Baykeeper a compilation of individual SSO reports for each spill it reported to the State Board.  The City may discontinue providing Baykeeper with compilations of individual spill reports after the first two Annual Reports required under Section XVI of this Consent Decree are provided, unless Baykeeper requests in writing that the City continue to provide such compilations.

25. In the Annual Report required under Section XVI of this Consent Decree, the City shall provide Baykeeper with a summary of any changes to the total quantity of sewer line that will affect the calculation of the San Carlos Collection System SSO Reduction Performance Goals and Lower Lateral SSO Reduction Performance Goals.

## IX.   SSO REDUCTION ACTION PLAN

26. If any Annual Report required under Section XVI of this Consent Decree provided by the City to Baykeeper documents compliance with the then-applicable SSO Reduction Performance Goals, the City shall have no obligation to prepare a SSO Reduction Action Plan as set forth herein.  However, if an Annual SSO Summary Report documents SSOs in excess of the SSO Reduction Performance Goals of this Consent Decree, the City shall submit to Baykeeper by June 1st of that same year a SSO Reduction Action Plan that specifies the actions taken in the prior calendar year pursuant to the Consent Decree and additional measures to be taken during the pending calendar year and thereafter, which are designed to achieve compliance with the SSO Reduction Performance Goals set forth in this Consent Decree.  The SSO Reduction Action Plan shall include a proposed schedule for implementation of all actions proposed.

27. Baykeeper shall provide the City, in writing, with all recommended revisions to the SSO Reduction Action Plan within thirty (30) days of receipt of the document.  The City shall consider each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's comments whether the City accepts each such recommendation for revision, and if not provide a detailed explanation as to why Baykeeper's comments are being rejected.  Baykeeper may seek dispute resolution pursuant to Section XIX of this Consent Decree regarding disputes over the SSO Reduction Action Plan. In such Dispute Resolution processes, to the extent the Parties do not dispute original provisions or recommended revisions, the City shall implement all undisputed provisions or revisions.  After the

Parties have reached agreement on the SSO Reduction Action Plan or after Dispute Resolution resolves any dispute concerning the SSO Reduction Action Plan, the City shall begin implementation of the SSO Reduction Action Plan as an enforceable requirement of this Consent Decree within forty-five (45) days of agreement on the SSO Reduction Action Plan, or upon the schedule set forth therein.

28. The City shall address in the SSO Reduction Action Plan the various elements of such a plan that it believes will be necessary to achieve future compliance with the SSO Reduction Performance Goals, which may include any or all elements in its SSMP Program.

29. If additional funding is necessary to implement the SSO Reduction Action Plan, the City shall seek such funding as soon as is practical.  If the City seeks financing, but is unsuccessful, the City shall disclose in the SSO Reduction Action Plan the extent of its efforts to obtain financing.

## X.  CAPACITY ASSURANCE

30. By March 31, 2011, the City shall have completed sufficient flow monitoring of the San Carlos Collection System to support hydraulic modeling.  The monitoring shall be sufficient to calibrate and validate hydraulic modeling of the San Carlos Collection System.

31. Hydraulic Modeling Work Plan.  By August 1, 2010, The City shall submit a Hydraulic Modeling Work Plan for the San Carlos Collection System.  The hydraulic modeling shall be sufficient to identify all necessary capacity improvements to convey peak wet weather flows to the South Bayside System Authority WWTP without SSOs caused by insufficient capacity in the San Carlos Collection System.  The Hydraulic Modeling Work Plan shall contain a schedule for hydraulic modeling and all supporting efforts such as smoke testing, dye testing and other measures necessary to identify sources of I/I.

32. Capacity Assurance Report.  By March 31, 2012, the City shall provide a Capacity Assurance Report to Baykeeper identifying all necessary capacity improvements to convey peak wet weather flows to the South Bayside System Authority WWTP without SSOs caused by insufficient capacity.  The Capacity Assurance Report shall include a schedule for construction of all necessary capacity improvements identified in the Capacity Assurance Report based on Design Storm criteria. The schedule for construction of capacity improvements shall be as expeditious as is practicable and the City shall complete construction of such improvements within five (5) years from the date of the final

Capacity Assurance Report.  In no event shall the completion of the construction of the improvements identified in the Capacity Assurance Report extend beyond the Termination Date.

33. <u>Inflow and Infiltration (I/I)</u>.  I/I identified within the San Carlos Collection System by the hydraulic modeling, smoke testing, dye testing, and condition assessment programs set forth herein, shall be identified and addressed in the Capacity Assurance Report.  Major sources of I/I shall be removed as expeditiously as practicable.  The Capacity Assurance Report shall include capacity improvements for the San Carlos Collection System designed to eliminate capacity-related SSOs during the rain events of less than the Design Storm.

34. <u>Final Compliance Report</u>.  The City shall provide to Baykeeper a Final Compliance Report for Baykeeper's review and comment.  The Final Compliance Report shall be submitted to Baykeeper a minimum of one (1) year prior to the Termination Date and the Final Compliance Report shall provide the status of all of the construction and other related activities required in the Capacity Assurance Report.  The report shall provide sufficient information and detail to reasonably demonstrate that the City has undertaken and will have completed sufficient activities to fully comply with the capacity related SSOs for rain events less than the Design Storm by the Termination Date.  This Final Compliance Report shall be subject to review, comment and referral to the Dispute Resolution Procedures as set forth in Section XIX of this Consent Decree.  If the City determines that a fee increase is required to fund capacity improvement projects designed to eliminate capacity-related SSOs, the City may request a one time, one-year extension to implement the fee increase and obtain the revenue stream. If the City requests the one-year extension, the City shall have the burden to demonstrate that elimination of capacity related SSOs cannot be accomplished on the schedule set forth in this Consent Decree without the fee increase.  This extension request shall be subject to the dispute resolution procedures set forth in Section XIX of this Consent Decree.

35. <u>Review of Submittals</u>.  Baykeeper shall have the right to review the Hydraulic Modeling Work Plan and provide comments thereon. Baykeeper shall provide the City, in writing, with all recommended revisions to the Hydraulic Modeling Work Plan within twenty (20) days of receipt of the document.  The City shall consider each of Baykeeper's recommended revisions and indicate within twenty (20) days of receipt of Baykeeper's comments whether the City accepts each such

1  recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments
2  are being rejected. The City shall implement, within twenty (20) days of receipt of Baykeeper's
3  comments, all elements in the Hydraulic Modeling Work Plan agreed to by Baykeeper and the City.
4  Baykeeper may seek dispute resolution pursuant to Section XIX of this Consent Decree regarding
5  disputes over the Hydraulic Modeling Work Plan.

6      36. Baykeeper shall also provide the City, in writing, with all recommended revisions to the
7  Capacity Assurance Report within thirty (30) days of receipt of the document.  The City shall consider
8  each of Baykeeper's recommended revisions and indicate within thirty (30) days of receipt of Baykeeper's
9  comments whether the City accepts each such recommendation for revision and if not provide a detailed
10  explanation as to why Baykeeper's comments are being rejected.  Baykeeper may seek dispute resolution
11  pursuant to Section XIX of this Consent Decree regarding disputes over the Capacity Assurance Report.

12      37. Neither Party shall invoke Dispute Resolution until both Parties have made good faith efforts
13  to resolve any professional differences with regard to the Hydraulic Modeling Work Plan and the
14  Capacity Assurance Report.

15  **XI.  SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT**

16      38.  Within three (3) years of the Effective Date of the Consent Decree, the City shall complete a
17  sewer system assessment ('SSA') inspection and condition assessment of all main sewer line segments in
18  the San Carlos Collection System that are fifteen (15) inches and smaller in diameter and are greater
19  than 10 years old.  The City shall inspect and assess no less than thirty (30) miles of sewer in each of the
20  first two (2) years of this Consent Decree.

21      39. Within one-hundred and twenty (120) days of the Effective Date of the Consent Decree, the
22  City shall propose to Baykeeper a work plan for CCTV inspections.  The defects shall be coded and
23  weighted using the Sanitary Sewer Assessment Defect Codes, which are attached hereto as Appendix A.

24      40. Inspections shall be accomplished using SSA.  The work products shall include an inspection
25  database, prioritized repair projects, and prioritized rehabilitation/ replacement projects.  The annual
26  inspection quantity will include the sum of the lengths of all of the gravity sewers where inspection was
27  completed.  Segments failing to pass the SSA device or camera shall not be included in the annual
28  inspection quantity.

1
2
3
4

41. The City shall correct defects that may cause an SSO within an appropriate timeframe. Based on the Sanitary Sewer Assessment Defect Code scores derived during SSA inspections, the City's timeframes for actions to correct observed defects in the sewer segments are shown on the table Timeframe for Actions to Correct Observed Defects set out below.

**Timeframe for Actions to Correct Observed Defect**

| Defect Weight | Condition | Condition Description | Remedy |
|---|---|---|---|
| 8–9 | Failure Imminent | Structural defects that may lead to complete failure and blockage of the pipe at any time | Repair completed immediately (within 30 days) |
| 6–7 | Severe | Severe structural defects of deformed pipe, holes in pipe, broken pipes, and large joint offsets | Repair completed within 1 year or for non-structural defects, re-assess condition within 1 year if it is determined that periodic maintenance can keep the pipe in working order |
| 4–5 | Major | Structural defects such as multiple fractures, medium joint offsets and major sags, and pipes with large number of cracks | Repair completed within 5 years, SSA and assess condition within 2 years |
| 2–3 | Moderate | Structural defects such as fractures, cracks, small and medium joint offsets, and sags | Inspect with SSA and assess condition every 5 years |
| 0–1 | Minor | Structural defects such as slight sags, cracks, and small joint offsets | Inspect with SSA and assess condition every 10 years |

42. The schedule proposed in paragraph 40 above shall be prioritized to first inspect sewers in areas with known SSO problems and sewers with known or suspected structural deficiencies

## XII.   IMPLEMENTATION OF FATS, OILS AND GREASE PROGRAM

43. The City shall continue to contract its FOG Control Program to South Bayside System Authority ('SBSA') as outlined in the 'Proposal to Conduct a FOG Program for the City of San Carlos' dated June 26, 2009.  Under this program, the City contracts FOG inspections and education to SBSA.

44. The City shall continue its own residential outreach program to reduce FOG from residential sources consistent with its SSMP.

45. The City shall commence a program for enforcement of violations of the Municipal Code relating to FOG discharges, including community outreach and education. The City agrees to modify its Municipal Code to include provisions for fines for each violation of not less than One Thousand Dollars ($1,000.00) for a first offense, and not less than Five Thousand ($5,000.00) for a second and/or subsequent offense. The Municipal Code may include provision for an initial six (6) month grace period for all customers commencing from the date of adoption of such fines, and may further provide for a warning prior to prosecution for residential customers who do not willfully violate the Municipal Code.

46. The City shall report to Baykeeper the number of violations of the Municipal Code relating to FOG discharges and the amount of money collected as fines by the City each year in the Annual Report required under Section XVI of this Consent Decree.

## XIII.   SEWER CLEANING, HOT SPOTS, AND LATERAL PROGRAMS

47. Routine Cleaning. The City shall clean all of its gravity sanitary sewer segments fifteen (15) inches in diameter or smaller in the San Carlos Collection System at least once every five (5) years. Lower Laterals shall be cleaned and inspected after each SSO caused by a blockage in the Lower Lateral.

48. Focused Cleaning Program. The City shall expand and improve its Focused Cleaning Program to include main line sewer segments having repeat and frequent blockages caused by Roots, Debris, and Pipe Condition, in addition to those main line segments included in the City's Focused Cleaning Program due to FOG.

49. Within one-hundred twenty (120) days from the Effective Date of the Consent Decree, the City shall develop and submit to Baykeeper for comments a Focused Cleaning Work Plan ("FCWP"). The FCWP shall include a listing of all lines requiring focused cleaning and the cleaning frequency for each identified line. The FCWP shall include the rationale relied upon to select the main sewer segments included in the FCWP and to determine cleaning frequencies. Cleaning frequencies for the Focused Cleaning Program shall include: one (1) month, two (2) month, three (3) month, six (6) month, twelve (12) month, and twenty-four (24) month cycles as needed. The FCWP shall incorporate the methodology set forth below in Figure 1 ("Preventive Maintenance Scheduling Flow Chart") in paragraph 50 below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

50.



Figure 1 - Preventive Maintenance Scheduling Flow Chart.

19   51. Baykeeper shall review and provide the City with comments on the FCWP within thirty (30)

20   days of submittal. The City shall consider each of Baykeeper's recommended revisions and indicate

21   within thirty (30) days of receipt of Baykeeper's comments whether the City accepts each such

22   recommendation for revision and if not provide a detailed explanation as to why Baykeeper's comments

23   are being rejected.  Baykeeper may seek dispute resolution pursuant to Section XIX of this Consent

24   Decree regarding disputes over the FCWP.

25   52. The Parties shall attempt to resolve any disputes regarding the FCWP in good faith.  Neither

26   Party shall invoke dispute resolution until good faith efforts to resolve disputes have been completed.

27   The City shall immediately implement all portions of the Focused Cleaning Program not in dispute and

28   shall implement all portions of the Final FCWP not previously implemented immediately upon

resolution of disputes.

53. The Focused Cleaning Program shall be maintained in the City's CMMS database.

54. The City shall collect all observations made by its trained sewer cleaning crews in accordance with the SSO Cause Determination SOP (Section VIII of this Consent Decree) regarding the extent and nature of materials removed during the cleaning process.  The observations shall be recorded in the City's CMMS database.  The City shall maintain or change the frequency of its focused cleaning for a sewer line segment based on the Sewer Cleaning Results Matrix set forth below in accordance with the section labeled "Action."

### Sewer Cleaning Results Matrix

| | Clear | Light | Moderate | Heavy |
|---|---|---|---|---|
| **Debris** | No observable debris | Minor amount of debris<br>1 pass | Moderate amounts of debris<br>2-3 passes | Significant amounts of debris<br>More than 4 passes<br>Operator concern for future stoppage |
| **Grease** | No observable grease | Minor amounts of grease<br>15 minutes or less to clean<br>1 pass | Small "chunks"<br>No "logs"<br>15-30 minutes to clean<br>2-3 passes | Big "chunks" or "logs"<br>More than 4 passes<br>Operator concern for future stoppage |
| **Roots** | No observable roots | Minor amounts of roots<br>1 pass | Thin stringy roots<br>No "clumps"<br>2-3 passes | Thick roots<br>Large "clumps"<br>More than 4 passes<br>Operator concern for future stoppage |
| **Debris:** Structural pipe fragments soil, rock, etc. | No observable materials | Specify material (if possible)<br>Minor amounts of material | Specify material<br>Moderate amounts of material per line segment | Specify material<br>Significant amounts of material per line segment<br>Operator concern for future stoppage |

| Action | Decrease frequency to next lower frequency after 3 consecutive results (e.g. 6 months to 12 months) | Continue current maintenance frequency | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) |
|---|---|---|---|---|

55. Changes in cleaning frequency based upon cleaning results shall be as follows:

    a.   No reduction in cleaning frequency shall be made in a sewer line segment with a previous history of SSOs without the approval of an appropriate maintenance supervisor or superintendent;

    b.   three (3) consecutive results of "clear" will cause the cleaning frequency to be reduced to the next lower cleaning frequency;

    c.   results of "medium" or "heavy" will cause the cleaning frequency to be increased to the next highest frequency.

    d.   lines on a 12 month or 24 month cleaning cycle may be taken off the FCWP if there have been no SSOs on the line since the initial cleaning and the lines are found to be "clear" or "light" on the second cleaning.

56. At a minimum, main line segments shall be added to the Focused Cleaning Program based on the findings from any SSA Condition Assessment using the Operation and Maintenance Codes Table set forth in Appendix A–Sanitary Sewer Assessment Codes.

57. <u>Sewer Cleaning Quality Assurance/Quality Control Program</u>:  The City shall institute and maintain a quality assurance/quality control ("QA/QC") program adequate to ensure proper and complete cleaning of sewers.  The QA/QC program shall consist of spot checking the cleaning quality in a minimum of two percent (2%) by sewer segment of the cleaned sewers on a monthly basis using SSA to ensure adequate cleaning.  If the cleaning is found to be inadequate, the sewer segment will be re-cleaned within thirty (30) days.  If more than ten percent (10%) of the spot checked segments require re-cleaning in any given month, spot checking of the system shall be increased to five percent (5%).  Where spot checking of the system has increased to five percent (5%) pursuant to this section, such spot checking will not be reduced to two percent (2%) until three consecutive months show two percent (2%) or less of the pipes inspected required re-cleaning.  If a required inspection frequency increase is

identified with a single crew, the increased inspection schedule will only apply to that crew.

58. If scheduled or hot spot cleaning of a segment or area cannot be properly accomplished due to pipe condition or access limitations, the condition of the segment shall be considered failing and shall be repaired within one-hundred and twenty (120) days. If scheduled or hot spot cleaning cannot be properly accomplished due to access limitations, an action plan to gain access to the segment shall be developed within one-hundred and twenty (120) days and shall be implemented via repair within one (1) year.

59. The City shall identify the sewer lines cleaned and the results of its QA/QC program each year in the Annual Report required by Section XVI of this Consent Decree.

## XIV.   **PRIVATE LATERALS**

60. Within one-hundred and (180) days of the Effective Date of this Consent Decree, the City shall propose and recommend to the City Council the adoption of amendments to the Municipal Code to:

    a.   Require inspection of private laterals as a condition to sale of a property;

    b.   Require inspection of private laterals as a condition to obtaining a building permit if the value of the construction either exceeds $75,000, or where any repair or replacement is being made to the sanitary sewer system;

    c.   Require inspection where more than twenty-five percent of the square footage of the structure is being remodeled;

    d.   Set standards for evaluating the condition of private laterals subject to the provisions in subsections (a)-(b) above.

    e.   Require any defects in the private lateral that causes the private lateral to fail the inspection be repaired or replaced within ninety (90) days.  Defects causing a private lateral to fail the inspection shall include but not be limited to the following: pipe failure; open joints; and/or openings in the pipe, which allow root intrusion.

    f.   Require the private lateral owner, within one-hundred and twenty (120) days of notification by the City, to remove roots from their laterals that are growing into Lower Laterals as determined by the City and make all necessary repairs to the private lateral necessary to prevent a reoccurrence of roots intrusion that reaches the lower lateral.

## XV.  CHEMICAL ROOT CONTROL PROGRAM

61. The City shall continue to implement its Chemical Root Control Program to supplement focused cleaning and routine cleaning to assure compliance with the San Carlos Collection System SSO Reduction Performance Goals and Lower Lateral SSO Reduction Performance Goals  in Section VII of this Consent Decree.  The City shall annually evaluate the effectiveness of the Chemical Root Control Program and present its findings in the Annual Reports required under Section XVI of this Consent Decree.  Should the City in any year determine that the Chemical Root Control Program is ineffective, the City may submit a request for terminating the program to Baykeeper that includes the basis for such termination.  Upon Baykeeper's written approval, the program shall be terminated.

## XVI.  ANNUAL REPORT

62. Commencing March 1, 2011 and each year that this Consent Decree remains in effect, the City shall submit an Annual Report to Baykeeper.  The Annual Report shall:

    a.  Include the specific annual reporting requirements as set forth in Sections VII, VIII, XII, XIII, and XV of this Consent Decree.

    b.  Provide details relevant to the City's implementation of, and compliance with, this Final Consent Decree during the preceding year, including any program modifications during the prior calendar year or delays.

    c.  Assess the City's progress towards meeting the requirements of the Consent Decree.

## XVII.  ENVIRONMENTAL MITIGATION PROJECT AND FEES AND COSTS

63. Environmental Mitigation Project.  To remediate perceived environmental harms resulting from the allegations in the Complaint, Defendant shall pay to the *Rose Foundation for Communities and the Environment* the total sum of Two-Hundred Thousand Dollars ($200,000) (the 'Mitigation Payment') to be used to fund environmental project activities that will benefit the San Francisco Bay or its tributaries.  Payment shall be made in two equal installments of $100,000.00, with the first installment of $100,000.00 due on or before June 30, 2010, and the second installment of $100,000.00 due on or before July 31, 2010.  These payments shall be made to:

The Rose Foundation for Communities and the Environment
6008 College Avenue, Suite 10
Oakland, California 94618
Attention: Tim Little

64. Litigation Fees and Costs. To help defray Baykeeper's attorneys, consultant, and expert fees and costs, and any other costs incurred as a result of investigating, filing this action, and negotiating a settlement, Defendant shall pay Plaintiff the sum of Ninety-Five Thousand Dollars ($95,000) which shall include all attorneys' fees and costs for all services performed by and on behalf of Baykeeper by its attorneys and consultants up to and through the Effective Date of this Consent Decree.  The payment shall be made within twenty-one (21) days of the Effective Date of this Consent Decree.  The payment shall be made in the form of a check payable to *Lawyers for Clean Water Attorney Client Trust Account* and addressed to:  1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery, and shall constitute full payment for all costs of litigation incurred by Baykeeper that have or could have been claimed in connection with or arising out of Baykeeper's lawsuit, up to and including the Effective Date.

65. Compliance Monitoring.  Defendants agree to compensate Plaintiff for time to be spent by legal staff and/or technical consultants reviewing compliance reports and any other documents, or participating in any meet and confer process under this Consent Decree.  To this end, the Defendant shall pay Fifty-Five Thousand Dollars ($55,000) within twenty-one (21) days of the Effective Date of this Consent Decree.  Payment shall be made payable to *Lawyers for Clean Water Attorney Client Trust Account* and addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery. Any compliance monitoring money remaining when this Consent Decree terminates shall be returned to the City within sixty (60) days of termination.

## XVIII.  COMMITMENTS OF BAYKEEPER

66. Submission of Consent Decree to Federal Agencies. Baykeeper shall submit a copy of this Consent Decree to EPA and the United States Department of Justice ('DOJ') within three (3) days of the Consent Decree's execution for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided by Baykeeper to Defendant upon request.  In the event that EPA or DOJ comment negatively on the provisions of this Consent Decree, the Parties agree to meet and

1    confer to attempt to resolve the issue(s) raised by EPA or DOJ.

2        67. <u>Filing of Consent Decree With the Court</u>.  Plaintiffs shall file this Consent Decree with the

3    District Court within three (3) days of the Effective Date.  Plaintiff is responsible for notifying

4    Defendant of the District Court's entry of the Order dismissing these claims with prejudice.  Such

5    notification can be satisfied by the District Court's Case Management/Electronic Case Filing ("CM/ECF")

6    notification to the Parties that the Order was executed and entered by the District Court.

7

8                                    **XIX.   DISPUTE RESOLUTION**

9        68. If Defendant claims inability to pay as the basis for its failure to comply with any provision

10   of this Consent Decree Defendant shall submit financial documents to Plaintiffs adequate to support

11   their claim of inability to pay no later than thirty (30) days from their failure to comply.  Plaintiff

12   reserves the right to require the submission of additional financial documents in order to analyze

13   Defendant's claim of inability to pay and Defendant agrees to provide said documents.

14       69. This District Court shall retain jurisdiction over this matter for the purposes of adjudicating

15   all disputes among the Parties that may arise under the provisions of this Consent Decree.  The District

16   Court shall have the power to enforce this Consent Decree with all available legal and equitable

17   remedies, including contempt.

18       70. <u>Meet and Confer</u>. A Party to this Consent Decree shall invoke the dispute resolution

19   procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the

20   Party's proposal to resolve the dispute under this Section.  The Parties shall then meet and confer in an

21   attempt to resolve the dispute informally over a period of ten (10) calendar days from the date of the

22   notice.

23       71. If the Parties cannot resolve a dispute by the end of the meet and confer informal

24   negotiations, the Party invoking the dispute resolution provision may invoke formal dispute resolution

25   by filing a motion before the District Court.  The Parties shall jointly apply to the District Court for an

26   expedited hearing schedule on the motion.

27       72. If Plaintiff invokes any of the provisions of this Section to enforce the terms and conditions

28   of this Consent Decree, Plaintiff shall be entitled to recover reasonable fees incurred to enforce the terms

1  of this Consent Decree consistent with the provisions of sections 505 and 309 of the Clean Water Act,

2  33 U.S.C. §§ 1365, 1319.

3  **XX.    MUTUAL RELEASE OF LIABILITY, COVENANT NOT TO SUE, AND FORCE
4  MAJEURE**

5      73. In consideration of the above, upon the Effective Date of this Consent Decree, the Parties

6  hereby fully release, except for claims for the Defendant's failure to comply with this Consent Decree

7  and as expressly provided below, each other and their respective successors, assigns, officers, agents,

8  employees, and all persons, firms, and corporations having an interest in them, from any and all Clean

9  Water Act violations alleged or which could have been alleged based upon the facts alleged in the

10  Complaint, up to and including the Termination Date of this Consent Decree.

11      74. Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take

12  any position that it deems necessary or appropriate in any formal or informal proceeding before the

13  Regional Board, EPA, or any other judicial or administrative body on any other matter relating to

14  Defendant.

15      75. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute

16  or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it

17  be construed as an admission of violation of any law, order, rule, or regulation. Defendant maintains and

18  reserves all defenses they may have to any alleged violations that may be raised in the future.

19      76. Force Majeure.  Defendant shall notify Baykeeper pursuant to the terms of this paragraph,

20  when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth

21  in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendant, due to

22  circumstances beyond the control of Defendant or its agents, and which could not have been reasonably

23  foreseen and prevented by the exercise of due diligence by Defendant.  Any delays due to Defendant's

24  failure to make timely and bona fide applications and to exercise diligent efforts to comply with the

25  terms in this Consent Decree in normal inclement weather shall not, in any event, be considered to be

26  circumstances beyond Defendant's control.  Financial inability shall not, in any event, be considered to

27  be circumstances beyond Defendant's control.

28      a.  If Defendant claims impossibility, it shall notify Baykeeper in writing within thirty (30)

days of the date that Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendant should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.  Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant, new performance deadlines shall be established.

c. If Baykeeper disagrees with Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either Party shall have the right to invoke the Dispute Resolution Procedures pursuant to Section XIX of this Consent Decree.  In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

77. The Dispute Resolution Procedures set forth in Section XIX shall be the exclusive mechanism for resolving disputes between the Parties with regard to any aspect of this Consent Decree.

### XXI.  STIPULATED PAYMENTS

78. <u>Stipulated Payments for Failure to Comply with Consent Decree</u>.  Defendant shall make a stipulated payment of One Thousand Dollars ($1,000) for each missed deadline and/or failure to comply with a requirement included in or contemplated by this Consent Decree, unless the failure to comply is from a Force Majeure Event.  Payments for missed deadlines shall be made for the restoration and/or

improvement of the San Francisco Bay watershed, and shall be awarded to the Environmental Mitigation Project recipient identified above.  Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline and mail via certified mail or overnight delivery. Defendant shall provide Plaintiff with a copy of each such payment.

79. The City agrees to make stipulated payments in the event complete reports covered by this Section are not timely submitted. Reports covered by this Section include the following Sections from this Consent Decree: the SSO Cause Determination SOP under Section VIII; the SSO Reduction Action Plan under Section IX; the Hydraulic Modeling Work Plan, Capacity Assurance Report, and Final Compliance Report under Section X; the FOG Control Action Plan under Section XII; and the Annual Reports under Section XVI.  The City shall have a fourteen (14) day grace period after the due date for the reports covered by this Section prior to imposition of stipulated penalties for the first instance of delayed reporting. Baykeeper is not obligated to notify the City, however it may do so in order to allow the City to promptly address any alleged deficiency after any submission date has been missed.

80. The City shall pay the following stipulated payments in the event that they file a late or incomplete report covered herein after the grace period:

   a. For a report submitted after the grace period, the City shall pay $100 per day until the report is filed, up to thirty (30) days for a total amount of $3,000.

   b. For any report more than thirty (30) days late, the City shall pay $5,000.

   c. For any report more than ninety (90) days late, the City shall pay $10,000.

   d. The above penalties are cumulative, as applicable, to a maximum payment of $18,000 per report.

81. In the case of a late report, the City shall send Baykeeper the report per Section XXII of this Consent Decree. Baykeeper shall notify the City of receipt of the late report and shall include an invoice for the amount of the stipulated payment, if any, due and payable.  The City shall contact Baykeeper within five (5) working days if the City disagrees with Baykeeper's stipulated payment calculation and may meet and confer with Baykeeper or seek Dispute Resolution pursuant to Section XIX of this Consent Decree.  The City shall pay any stipulated payments due pursuant to this Consent Decree within thirty (30) days after receipt of Baykeeper's invoice itemizing the stipulated payment liability, or thirty

(30) days after resolution of a dispute if the dispute resolution process has been invoked pursuant to Section XIX of this Consent Decree.

82. All payments of stipulated penalties described in this Consent Decree shall be paid by the City to the *Rose Foundation for Communities and the Environment* and sent via overnight mail to: Rose Foundation for Communities and the Environment, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.  Nothing in this Consent Decree shall prevent Baykeeper from waiving any stipulated penalties, which might be due under this Section, based on the outcome of the Informal Dispute Resolution process, or based on the City's good faith efforts.

## XXII.   NOTICES AND SUBMISSIONS

83. Defendant agrees to provide Plaintiff with all documents or reports required or contemplated by this Consent Decree.  All documents provided by Defendant shall be directed to the following individuals at the addresses specified below unless specifically stated otherwise herein and shall be sent by certified or overnight delivery, and by electronic mail.  Any change in the individuals or addresses designated by any Party must be made in writing to all Parties.

If to BAYKEEPER:

Daniel Cooper
Martin McCarthy
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, CA 94129
Telephone: (415) 440-6520
Email: daniel@lawyersforcleanwater.com
        martin@lawyersforcleanwater.com

Jason Flanders
SAN FRANCISCO BAYKEEPER, INC.
785 Market Street, Suite 850
San Francisco, CA 94103-2023
Email: jason@baykeeper.org

If to the CITY:

Gregory J. Rubens
AARONSON, DICKERSON, COHN & LANZONE
939 Laurel Street, Suite D
San Carlos, CA 94070
Telephone: (650) 593-3117 ext. 202
Fax: (650) 637-1401
Email: grubens@adcl.com

Mark Weiss
CITY OF SAN CARLOS
600 Elm Street
P.O. Box 3009
San Carlos, CA 94070
Tel:  (650) 802-4228
Fax: (650) 595-6729
Email:  mweiss@cityofsancarlos.org

84. Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.

85. Defendant also agrees to make available to Baykeeper any new or existing documents within the City's custody or control that are reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within seven (7) days of written request by Baykeeper.

86. During the life of this Consent Decree, Defendant shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

87. Any notice, report, certification, data presentation or other document submitted by Defendant to Baykeeper pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXIII.   <u>GENERAL PROVISIONS</u>

88. <u>Continuing Jurisdiction</u>.  The Parties stipulate that the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date in paragraph 10.

89. <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in Section II above.

90. <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

91. <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a District Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

92. <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, scanned copies (i.e., pdf) and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

93. <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

94. <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

95. <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

96. <u>Authority</u>.  The undersigned representatives for Baykeeper and the City each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

///

///

///

1    The Parties hereby enter into this Consent Decree.

2                                                    CITY OF SAN CARLOS

3

4    Date: _____            _____

5                                                    By: Mark Weiss, City Manager

6                                                    SAN FRANCISCO BAYKEEPER

7

8
     Date: _____            _____
9                                                    By: Deb Self, Executive Director

10

11   APPROVED AS TO FORM:                    For DEFENDANT CITY OF SAN CARLOS:

12                                                    AARONSON DICKERSON COHN & LANZONE

13

14   Date: _____            _____

15                                                    By: Greg Rubens

16                                                    CITY ATTORNEY

17

18
     Date: _____            _____
19                                                    By: Mark Weiss
20                                                    Assistant City Attorney

21

22                                                    For SAN FRANSCISCO BAYKEEPER:

23                                                    LAWYERS FOR CLEAN WATER INC.

24
     Date: _____            _____
25                                                    By: Daniel Cooper

26

27

28

## ORDER

IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Baykeeper's claims against the City of San Carlos for the sole purpose of enforcing compliance by the Parties with the terms of the Consent Decree. All proceedings relating to enforcing compliance with the Consent Decree shall be before the federal Magistrate.

IT IS SO ORDERED.


Date: 4/19/10                                    NORTHERN DISTRICT OF CALIFORNIA


_____

Honorable Saundra Brown Armstrong
United States District Court Judge
Northern District of California